IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**LASKIN ROAD ASSOCIATES, L.P.,**

   **Plaintiff,**

v.                     Civil Action No. 2:07cv103

**CAPITOL INDUSTRIES, INC.,**

   **Defendant.**

*MEMORANDUM OPINION AND ORDER*

   This matter is before the Court on Laskin Road Associates, L.P.'s ("Plaintiff") motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Having carefully reviewed the parties' pleadings and after holding a hearing on this matter on June 4, 2007, the Court finds this matter ripe for judicial determination. For the reasons below, Plaintiff's motion for summary judgment is **GRANTED**.

**I. FACTUAL AND PROCEDURAL HISTORY**

   Plaintiff is a limited partnership whose general and limited partners are citizens of Virginia, Washington, Massachusetts, Connecticut, and Florida. Capitol Industries, Inc. ("Defendant") is a Maryland corporation with its principal place of business in Maryland. On September 10, 1990, Plaintiff and Defendant entered into a written lease agreement for the Surf & Sand Movie Theater (the "Property"), located in Virginia Beach, Virginia. The lease is for a twenty-year term commencing on May 24, 1991 and terminating on September 30, 2011. The

lease requires Defendant to pay Plaintiff monthly rent of $40,763.07.  The lease also requires Defendant to pay all the real estate taxes associated with the Property.  Finally, the lease provides that should Defendant breach or default on the lease, Defendant is liable to Plaintiff for reasonable costs, expenses, and attorney's fees incurred as a result of the breach or default.

The lease includes four addendums.  The fourth and final addendum (the "Fourth Addendum"), dated June 19, 2003, arose after Regal Cinema, Inc. ("Regal Cinema"), to whom Defendant had assigned the lease, declared bankruptcy and defaulted on the lease.  The Fourth Addendum states that Defendant assumed Regal Cinema's obligations under the lease and was obligated to pay Plaintiff the past due rent, taxes, and utilities.  The Fourth Addendum recites that Regal Cinema paid a sum to Plaintiff that accounted for the amounts past due plus a balance of $260,000 that was to be retained by Plaintiff as security for Defendant's performance under the lease.  This balance was to be credited to Defendant's account in the amount of $2,626.26 per month, provided that Defendant was not in monetary default.

On December 21, 2006, Plaintiff provided Defendant with a receipt for the real estate taxes for the Property in the amount of $14,096.11 and a request that Defendant reimburse Plaintiff for the taxes by January 12, 2007.  Defendant never responded and admits it has never reimbursed Plaintiff for the taxes.  On January 10, 2007, Defendant sent a letter to Plaintiff stating that Defendant could no longer pay the rent and enclosing a partial payment of $3,985.52.  On January 25, 2007, Plaintiff sent Defendant a written notice of default.  Defendant admits that it has not made the full required rent payments and that it has never cured the default.  In addition to its partial January 2007 payment, Defendant made partial rent payments of $4,176.50 for February 2007, $4,297.39 for March 2007, and $4,585.53 for April 2007.

On February 9, 2007, Plaintiff filed a complaint for unlawful detainer in the General District Court of the City of Virginia Beach, Virginia. On March 5, 2007, Defendant removed this action to this Court pursuant to 28 U.S.C. § 1441 (2000). Defendant filed an answer on March 12, 2007. Plaintiff filed the instant motion for summary judgment on March 21, 2007. Defendant responded on April 6, 2007. Plaintiff filed a reply on April 11, 2007.

## II.  LEGAL STANDARD

Rule 56(c) provides for summary judgment if the Court, viewing the record as a whole, determines "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 700 (4th Cir. 2001) (citing *McKinney v. Bd of Trustees of Mayland Cmty. Coll.*, 955 F.2d 924, 928 (4th Cir. 1992) (stating that "[S]ummary judgments should be granted in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not necessary to clarify the application of the law.")). In deciding a motion for summary judgment, the Court must view the facts, and inferences to be drawn from the facts, in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). To defeat summary judgment, the nonmoving party must go beyond the pleadings with affidavits, depositions, interrogatories, or other evidence to show that there is in fact a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

### III.  DISCUSSION

Plaintiff's sole claim is for breach of a lease agreement.  Under Virginia law, "The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation."  *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004).  Defendant does not dispute that it had a legally enforceable obligation to Plaintiff arising from the lease agreement.  Defendant also does not dispute that it has failed to pay the full amount of rent and taxes due under the lease.  In its defense, however, Defendant argues that:  (1) Plaintiff in fact committed the first material breach under the lease by failing to give Defendant the required credit under the Fourth Addendum, (2) that the Fourth Addendum is ambiguous and parol evidence should be admissible to resolve the ambiguity, (3) that Plaintiff now seeks to obtain an impermissible forfeiture of Defendant's security deposit, and (4) that damages are unclear because Plaintiff has not attempted to mitigate its damages.

**A.  First Material Breach**

Defendant's first argument is that on January 1, 2007, before Defendant was in monetary default, Plaintiff was required under the Fourth Addendum to apply $2,626.26 to the rent due, and that Plaintiff breached the agreement first by spending the deposit that gave rise to the credit. It is true that if the first party to breach a contract commits a material breach, "that party cannot enforce the contract."  *Horton v. Horton*, 254 Va. 111, 115, 487 S.E.2d 200, 204 (1997).

Defendant attempts to construe Plaintiff's alleged failure to apply the $2,626.26 credit to the rent as a failure, in effect, of the landlord to pay rent to the tenant. Defendant then cites *El Jalapeno Mexican Food, L.L.C. v. Rodgers*, 68 Va. Cir. 178, 179 (2005) for the proposition that failure to pay rent is considered a material breach.

Defendant's argument is based on an entirely unnatural reading of the Fourth Addendum. The operative language from the Fourth Addendum states:

> Beginning with the rent payment due July 1, 2003, Tenant, provided that Tenant is not then in monetary default, under the Lease after the expiration of all applicable notice and cure periods, shall be permitted to withdraw $2,626.26 per month from the deposit and apply said sum to Rent due under the Lease.

(Notice of Removal Pursuant to 28 U.S.C. §§ 1441, 1446, Ex. B at Ex. C, ¶ 3 [hereinafter Notice].) This language provides that *if* Defendant is not in default, *then* Plaintiff is to credit $2,626.26 toward Defendant's rent account. The $2,626.26 is clearly not meant to be any kind of up-front payment from the landlord to the tenant, to be given before the rent itself becomes due on the first of the month. The correct interpretation is suggested not only by the clear language of the addendum, but also by the history of the addendum as expressed in the addendum's "whereas" clauses. *See Scott v. Albemarle Horse Show Ass'n*, 128 Va. 517, 526, 104 S.E. 842, 846 (1920) ("[T]he recitals are often helpful in the construction of contracts and throw light on the meaning and intent of the parties."). The parties entered into the Fourth Addendum after Regal Cinema defaulted on the rent. (Notice, Ex. B at Ex. C.) Given this history, the monthly credit was meant to provide an incentive for Defendant to pay its full rent on time. The only way Defendant would have been entitled to the $2,626.26 credit for January 2007 was if Defendant was not in monetary default after the expiration of all cure periods. (*Id.*) Defendant admits to

5

never having paid the full rent due for January 2007. Put simply, Plaintiff could not have breached the lease for failing to give Defendant a credit that Defendant earns only by making timely payments, when Defendant admits the failure to make those payments.

Defendant further argues that Plaintiff is in breach for spending the settlement proceeds that are the origin of the $2,626.26 credit. However, whether Plaintiff has spent the actual dollars that gave rise to the monthly credit is immaterial. The Fourth Addendum obligated Plaintiff to pay Defendant $2,626.26 per month as a rent credit, assuming Defendant kept current with its payments. The fact that the actual dollars that made up the monthly credit were not derived from the original $260,000 is not relevant.

**B. Ambiguity**

Defendant's second argument is that the terms of the Fourth Amendment are ambiguous, such that parol evidence is required to determine their meaning. *See Anden Group v. Leesburg Joint Venture*, 237 Va. 453, 458, 377 S.E.2d 452, 455 (1989) (stating that parole evidence "can be admitted to clarify ambiguous terms as well as additional or supplemental terms and agreements that are not inconsistent with the original writing."). Whether a contract is ambiguous is a question of law to be determined by the Court. *Va. Elec. & Power Co. v. N. Va. Reg'l Park Auth.*, 270 Va. 309, 315, 618 S.E.2d 323, 326 (2005). "An ambiguity exists when language admits of being understood in more than one way or refers to two or more things at the same time." *Renner Plumbing, Heating & Air Conditioning, Inc. v. Renner*, 225 Va. 508, 515, 303 S.E.2d 894, 898 (1983). "Contracts are not rendered ambiguous merely because the parties or their attorneys disagree upon the meaning of the language employed to express the agreement." *Doswell Ltd. P'ship v. Va. Elec. & Power Co.*, 251 Va. 215, 222-23, 468 S.E.2d 84,

6

88 (1996). Also, "[P]arol evidence may not be used to first create an ambiguity and then to remove it." *Id.* at 223, 468 S.E.2d at 89. Finally, "The pole star for the construction of a contract is the intention of the contracting parties *as expressed by them in the words they have used.*" *Ames v. Am. Nat'l Bank of Portsmouth*, 163 Va. 1, 38, 176 S.E. 204, 216 (1934), *quoted in Va. Elec. & Power Co.*, 270 Va. at 316, 618 S.E.2d at 326.

Defendant states that the parties are in dispute over the nature of the "Deposit" referred to in paragraph three of the Fourth Addendum. Defendant argues that the Deposit is actually Defendant's property being held by Plaintiff, and that Plaintiff's interpretation of the Deposit as a non-refundable sum to be used as an incentive is incorrect. Plaintiff maintains that Defendant has no interest in the Deposit that survives Defendant's breach.

Upon examining the Fourth Addendum, the Court finds that there is no ambiguity. The addendum states that "$260,000 . . . shall be retained by the Landlord as security for Tenant's performance of its obligations under the Lease ('Deposit')." (Notice, Ex. B at Ex. C, ¶ 2.) The addendum clearly provides that Defendant is entitled to withdraw the monthly credit from the Deposit only if Defendant is not then in monetary default, and the addendum provides that the credit from the Deposit is to be applied to rent. As discussed above, the operation of this monthly credit is straightforward. The only reasonable interpretation of this language is that the $260,000 was meant to be held by Plaintiff and credited back to Defendant on a monthly basis, provided that Defendant kept current on its rent obligation. To that extent, and especially in light of the history of the Property as expressed in the "whereas" clauses of the Fourth Addendum, the Deposit was certainly an incentive for Defendant to stay current with its rent payments. The

Court cannot find any ambiguity in the language of the Fourth Addendum such that the introduction of parol evidence is necessary.

**C. Forfeiture**

Defendant's third argument is that Plaintiff's retention of the Deposit funds amounts to a forfeiture of Defendant's property. Plaintiff argues that Defendant lacks any interest in the Deposit, such that the question of forfeiture does not arise. Defendant's argument concerning forfeiture is related to its ambiguity argument in that both depend on the Court's construction of the Fourth Addendum's language describing the Deposit. As discussed above, the Court does not find the Fourth Addendum to be ambiguous. Plaintiff is correct in that the Deposit in the instant case is not a typical security deposit paid by a lessee and automatically credited to the lessee upon a breach. *See Jones v. Dokos Enters.*, 233 Va. 555, 558-59, 357 S.E.2d 203, 205-06 (1987) (holding that a security deposit was not included in an assignment of a lease and that it remained the property of the original lessee). The Deposit was not paid by Defendant to Plaintiff at the inception of the lease; rather, it was paid to Plaintiff by a defaulting assignee as part of a settlement. Most of that settlement was allocated toward rent, taxes, and fees that had accrued as a result of the defaulted assignee. Plaintiff and Defendant agreed that the rest of the settlement, $260,000, "shall be *retained* by the Landlord as security for Tenant's performance of its obligations under the Lease ('Deposit')." (Notice, Ex. B at Ex. C, ¶ 2 (emphasis added).) As discussed above, Defendant was to receive a monthly credit from this amount based on its continued compliance with the lease. The Deposit therefore differs from a typical security deposit in that first, it was actually paid to the landlord by a third party, and second, it provides for a monthly credit to the tenant provided the tenant made timely rent payments.

8

The most telling evidence that the Deposit is not meant to be a traditional security deposit lies in the language of the Fourth Addendum itself.  The Fourth Addendum states that:

> In the event of a monetary default by Tenant under the Lease which is not cured after the expiration of all applicable notice and cure periods, Landlord may utilize the Deposit to cure such monetary default.  In the event Landlord utilizes any portion of the Deposit to cure a Tenant monetary default, Tenant shall, within ten (10) days of receipt of written notice from Landlord, pay to Landlord any such amount deducted from the Deposit to cure Tenant's default in order to restore the Deposit.  Failure by Tenant to pay such amount to Landlord within such ten (10) days shall constitute an additional default by Tenant.  If Landlord incurs legal fees and costs as a result of Tenant's failure to restore the Deposit, Tenant shall be responsible for the payment of such legal fees and costs.

(*Id.* at ¶ 4.)  This paragraph states that Plaintiff *may* utilize the Deposit to cure a monetary default, and "In the event" Plaintiff does so, Defendant is under the obligation to restore the Deposit.  This means that Plaintiff was not required to apply the balance of the Deposit to Defendant's default.  Importantly, it also means that should Plaintiff apply the Deposit to Defendant's default, Defendant would soon be under the obligation to restore the Deposit.  Paragraph Four of the Fourth Addendum clearly establishes the character of the Deposit as a fund of money to be used as an incentive for Defendant to make timely payments, with Defendant under an obligation to restore this fund should any default occur.  Defendant has clearly defaulted in the instant case.  Whether Plaintiff is required to credit any remaining Deposit funds toward Defendant's rent obligation is immaterial, because under the express terms of the Fourth Addendum Defendant would be obligated to restore those funds anyway.  Defendant has been in default since January 2007 and has represented in this litigation that it is not in a position to continue paying the rent required under the lease.  (Def.'s Opp'n, With Points and Authorities, to

Pl.'s Mot. for Summary J. at 1.) Whether Defendant is in default on its rent obligation or an obligation to renew the Deposit makes no relevant difference.

**D. Mitigation of Damages**

Defendant's final argument is that summary judgment for Plaintiff is not appropriate because Plaintiff has not presented any evidence that it has attempted to mitigate its damages. Mitigation of damages is generally required in Virginia for an injured party alleging a breach of contract. *Forbes v. Rapp*, 269 Va. 374, 380, 611 S.E.2d 592, 595-96 (2005). The mitigation of damages in a commercial landlord-tenant context, however, is less settled.

Historically, under common law, leases were seen strictly as transfers of property interests and not contracts, so the duty to mitigate damages under contract law did not apply. *See generally Frenchtown Square P'ship v. Lemstone, Inc.*, 791 N.E.2d 417, 419-20 (Ohio 2003) (discussing the evolution of the mitigation rule as applicable to leases). However, the strong modern trend has been to impose a duty to mitigate in the context of leases. *See id.* (collecting cases and concluding that while four states impose no duty to mitigate damages in a commercial lease context, thirteen states do impose such a duty); *see also Austin Hill Realty, Inc. v. Palisades Plaza, Inc.*, 948 S.W.2d 293, 296-97 (Tex. 1997) (collecting cases and stating that, "Forty-two states and the District of Columbia have recognized that a landlord has a duty to mitigate damages in at least some situations: when there is a breach of a residential lease, a commercial lease, or both."). Virginia has imposed a duty to mitigate damages by statute for residential leases. *See* Va. Code Ann. § 55-248.35 (2003). Although there are several Virginia cases that touch upon the treatment of commercial leases, none is directly applicable to the instant case.

The first Virginia case at issue is *Crowder v. Virginian Bank of Commerce, Inc.*, 127 Va. 299, 103 S.E. 578 (1920). In *Crowder*, the issue arose as to whether the plaintiff landlord had a duty to find another tenant for the property in question where the tenant abandoned the lease in the middle of the lease term. *Id.* at 303-04, 103 S.E. at 579. The Supreme Court of Appeals of Virginia held that although the general rule is that "a plaintiff cannot recover for avoidable consequences," the general rule "does not apply to such a case as this." *Id.* at 303, 103 S.E. at 579. The *Crowder* court went on to hold that when a tenant abandons a property before the expiration of the lease, the landlord has the option of re-letting the property or permitting the property to remain vacant and recovering the rent for the remainder of the term. *Id.* at 304-05, 103 S.E. at 579. In rebutting the tenant's argument that the landlord could have relet the property sooner after the tenant abandoned it, the *Crowder* court stated that, "The landlord was under no obligation to resume possession of the premises which had been wrongfully abandoned, and had the right to refuse such possession and to hold the tenant liable under the contract." *Id.* Thus, *Crowder* clearly rejected any duty to mitigate when a commercial tenant abandons a lease in the middle of the lease term.

Ten years after *Crowder*, the Supreme Court of Appeals of Virginia decided *Hannan v. Dusch*, 154 Va. 356, 153 S.E. 824 (1930). *Hannan* involved an action by a prospective tenant against a landlord. *Id.* at 359, 153 S.E. at 825. The tenant alleged that he was never able to take possession of the property because the property was occupied by a trespasser who the landlord refused to take action against. *Id.* at 359-60, 153 S.E. at 825. The *Hannan* court first held that, absent an agreement to the contrary, a landlord has no duty to ensure that the tenant can enter into possession of the property. *Id.* at 375, 153 S.E. at 830. The *Hannan* court then addressed the

11

prospective tenant's failure to take action to evict the trespasser himself. *Id.* at 377, 153 S.E. at 831. The court stated that the prospective tenant was the party entitled to possession, and therefore the proper party to sue the trespasser. *Id.* at 378, 153 S.E. at 831. The court held that in this case, a duty to mitigate damages was applicable, and the prospective tenant failed to mitigate by not bringing an action to evict the trespasser. *Id.*

The next case to construe a duty to mitigate damages in a commercial lease context in Virginia is *tenBraak v. Waffle Shops, Inc.*, 542 F.2d 919 (4th Cir. 1976). The tenant in this case, Waffle Shops, Inc., leased property in order to construct a restaurant. *Id.* at 921. Upon discovering that the street access permits required for a restaurant could not be obtained, Waffle Shops notified the lessor that it considered the lease terminated and made no more rental payments on the property. *Id.* The United States Court of Appeals for the Fourth Circuit (the "Fourth Circuit") addressed the available remedies for the landlord, and concluded that, "In Virginia, the remedies of a landlord in an action against his tenant are generally recognized, in the absence of express statutory or judicial modification, to be the same as the remedies permitted a landlord at common law." *Id.* at 923. The Fourth Circuit distinguished cases where a tenant had taken possession under the lease from cases where there was a breach of a contract *to* lease. *Id.* at 923 n.3. The Fourth Circuit noted that in cases where a contract to lease is breached prior to entry, the landlord-tenant relationship never exists, contract law applies, and the mitigation of damages rule is applicable. *Id.* However, in cases where an abandonment occurs, the Fourth Circuit cited *Crowder* for the premise that, "the landlord is permitted, at his option, either (1) to refuse to accept the tenant's surrender, do nothing and sue for accrued rents, or (2) to re-enter the premises and accept the tenant's surrender, thereby terminating the lease and

releasing the tenant from further liability on the lease." *Id.* at 924. The Fourth Circuit therefore construed Virginia law to require the application of common law landlord-tenant remedies in a commercial lease context.[1]

The final case involving Virginia commercial lease law is *Cascades W. Assocs. Ltd. P'ship v. PRC, Inc.*, 36 Va. Cir. 324 (1995). *Cascades* was concerned with a holdover tenant paying less than the rent payments required under the lease. *Id.* at 325-27. The lease in *Cascades* included a rent guarantee provision, where the tenant remained liable for at least twelve years of lease payments unless a satisfactory substitute tenancy had been arranged. *Id.* at 343. The Circuit Court of Virginia, Fairfax County, held that if the tenant vacated the property at the conclusion of the original term or first optional term (before the twelve-year rent guarantee had expired), the landlord would have a duty to mitigate damages. *Id.* at 343-44. The court noted that, "As long as the tenant was current on its payments through the initial term, and, if applicable, the first option term, it would not have abandoned the leased property before the expiration of the lease term." *Id.* at 344. The court held that *Hannan* had limited the holding in *Crowder* so that the duty to mitigate would apply in a landlord-tenant relationship, under some circumstances. *Id.* The *Cascades* court concluded that the landlord had a duty to mitigate damages in light of the rent guarantee provision. *Id.* at 347-48.

---

[1] Since *tenBraak*, one case from the Eastern District of Virginia has reaffirmed the principle that commercial landlords in Virginia do not have to mitigate damages. In *Chesapeake Crossing Assocs. v. TJX Cos., Inc.*, No. 2:92cv631, 1992 WL 469801, at *5-6, the court rejected a request by a defendant tenant for discovery related to the plaintiff landlord's mitigation efforts, where the landlord was suing the tenant for accrued unpaid rent, citing both *Crowder* and *tenBraak*.

13

None of the cases cited above are directly on point. Unlike *Crowder* and *tenBraak*, there has been no abandonment in the instant case because Defendant has not vacated the premises. *See tenBraak*, 542 F.2d at 924 n.5 ("[T]wo elements are necessary to show abandonment: (1) vacation of the premises, and (2) a clear intent not to be bound by the lease."). Unlike *Hannan*, Defendant has taken possession of the Property and a clear landlord-tenant relationship exists. Finally, unlike *Cascades*, the instant case is not concerned with the effect of a rent guarantee provision on a holdover tenant, but rather simply with a tenant remaining in possession in the middle of a lease term who is unable to pay the full rent.

The Court finds that in the instant case Plaintiff is under no duty to mitigate damages. "It is axiomatic that in determining state law a federal court must look first and foremost to the law of the state's highest court, giving appropriate effect to all its implications." *Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997, 1002 (4th Cir. 1998). In addition, "A state's highest court need not have previously decided a case with identical facts for state law to be clear. It is enough that a fair reading of a decision by a state's highest court directs one to a particular conclusion." *Id. Crowder* clearly held that a commercial landlord had no duty to mitigate damages when a tenant abandons a lease in the middle of a term. *Crowder*, 127 Va. at 303, 103 S.E. at 579. *Hannan* dealt with the breach of a contract *to* lease, and did not address the consequences of a tenant's nonpayment of rent in the middle of a term.[2] The only way *Hannan* can be read as

---

[2] Another case cited by Defendant, *Stohlman v. S & B Ltd. P'ship*, 249 Va. 251, 255-56, 454 S.E.2d 923, 925-26 (1995), discussed a commercial landlord's duty to mitigate damages when, as in *Hannan*, the tenant had not yet taken possession under the lease. Therefore, *Stohlman* is distinguishable from the instant case in the same manner as *Hannan*. *See id.* at 255, 454 S.E.2d at 925 ("Because [the tenant] breached the provisions of its lease prior to taking possession of the premises, its liability for that default arises from breach of contract.").

narrowing *Crowder* is that after *Hannan*, *Crowder* only applies after the tenant has taken possession.

As mentioned above, *Crowder* is slightly different from the instant case because the tenant in *Crowder* abandoned the lease, while Defendant in the instant case remains in possession. However, Defendant has admitted to being unable to currently pay the required monthly rent. (Notice, Ex. B at Ex. B.) Defendant has remained in possession of the Property while making partial rental payments far below what the lease requires. The Court does not see how the fact that Defendant has not vacated the premises would somehow create a duty to mitigate for Plaintiff, when *Crowder* dictates that Plaintiff clearly would have no such duty in the event of an abandonment. Also, the Court notes that the instant case was originally filed as an unlawful detainer action in the General District Court of the City of Virginia Beach, the first step to removing Defendant from the Property, presumably so that Plaintiff could put the Property to more productive use.

*Cascades* does not change this result. First, as *Cascades* is a decision by a lower state court, this Court will "seek guidance" from it only when "a fair reading of a decision by [the] state's highest court" does not direct "a particular conclusion." *Assicurazioni Generali*, 160 F.3d at 1002. *Crowder* directs that Plaintiff has no duty to mitigate, and *Hannan* does not narrow that holding in a way meaningful to the instant facts. Second, *Cascades* is distinguishable, in that *Cascades* was concerned with the effect of a rent guarantee provision on a holdover month-to-month tenant, not a tenant breaching a lease by nonpayment of rent in the middle of a term. *Cascades* held that a duty to mitigate existed "as long as the tenant was current on its payments through the initial term, and, if applicable, the first option term . . . ." *Cascades*, 36 Va. Cir. at

15

344. In effect, *Cascades* applied *Hannan* to avoid *Crowder*'s no mitigation rule in a holdover situation. The instant case does not involve such a holdover; rather, Defendant is in the middle of a current lease term. Plaintiff is under no duty to mitigate damages, so Defendant's argument that summary judgment is not appropriate because discovery is needed on mitigation issues fails.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is **GRANTED**. Defendant shall provide Plaintiff with immediate possession of the premises. Defendant shall pay Plaintiff $248,862.16 in delinquent rent and unpaid real estate taxes.[3] In accordance with the lease, Plaintiff is hereby granted reasonable attorney's fees and costs, which shall be addressed in a separate order. The parties shall provide all submissions on the issue of attorney's fees within ten days of the date of this Memorandum Opinion and Order.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel and parties of record.

**IT IS SO ORDERED**.

_____/s/_____
Raymond A. Jackson
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
June 5, 2007

---

[3] At the hearing on June 4, 2007, Plaintiff provided to the Court an affidavit from its Accounts Manager, labeled Plaintiff's Exhibit One, that detailed Defendant's rent and tax obligations as of June 1, 2007. Also at the hearing, Defendant provided the Court a summary showing the balance due provided Plaintiff credits Defendant with the remaining portion of the $260,000 security deposit. However, as discussed above, the lease provides that Plaintiff has the option to credit Defendant with the deposit, and Plaintiff has not chosen to exercise this option.